393 So.2d 715 (1981)
STATE of Louisiana
v.
Richard A. ROBERDS
No. 80-KA-1831.
Supreme Court of Louisiana.
January 26, 1981.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Abbott J. Reeves, Clarence McManus, Asst. Dist. Attys., for plaintiff-appellee.
Brian M. Begue, New Orleans, for defendant-appellant.
CALOGERO, Justice[*].
Defendant Richard A. Roberds was charged by bill of information with possession of quaalude with the intent to distribute in violation of R.S. 40:967(A). Following denial of his motion to suppress the evidence, defendant entered a plea of guilty to the reduced charge of simple possession, reserving his right to appeal the ruling on the motion to suppress. State v. Crosby, 338 So.2d 584 (La.1976). The trial court sentenced defendant to one year in the parish prison, suspended this sentence, placed defendant on active probation for two years and ordered defendant to pay a fine of One Thousand Dollars plus court costs. Additionally, the court ordered defendant to tour Angola at his own expense.
At approximately 1:30 a. m. on November 19, 1979, the Volkswagen driven by defendant struck a parked automobile belonging to Mr. Edward Butler. Defendant continued driving a short distance before stopping to survey the damage sustained by his car. Carrying a shotgun, Mr. Butler pursued defendant to question him about the accident. Mr. Butler found defendant standing outside his own car in a somewhat dazed condition. Fearing that defendant might have a *716 weapon in his automobile, Mr. Butler conducted a search of the vehicle before laying aside the shotgun. Mr. Butler and defendant were discussing the accident when Officer Dennis Erwin of the Gretna Police Department passed on routine patrol. Officer Erwin noticed the pair and stopped to investigate. Mr. Butler told the policeman about the accident and Officer Erwin requested defendant's driver's license.
Regarding events after this point in time, witnesses at the hearing on the motion to suppress related differing versions, especially of the finding of the quaaludes.
Officer Erwin stated that defendant entered the car to retrieve his license from the glove compartment. According to the policeman, defendant made several sweeping motions with his hand as though attempting to push something under the seat of the car. Defendant's hand motions drew Officer Erwin's attention and he noticed 20-25 white pills scattered on the floorboard of the car. The officer inspected one pill carefully, observed that it was marked with the manufacturer's code for quaalude, a hypnotic and sedative, and arrested defendant for possession of a controlled dangerous substance and for hit and run. The policeman testified that he did not run a check on defendant's license to determine whether there was a warrant out for defendant's arrest when he first received the license from defendant, but thought that he had run one at some time during the evening. Officer Davis, a narcotics officer with the Gretna Police Department, arrived after defendant's arrest and stayed until defendant was transported to the station. Officer Erwin also stated that he believed his sergeant "passed by to check" but didn't think that he ever got out of the car.
Mr. Butler, the victim of the hit and run accident, was the next witness at the hearing on the motion to suppress. Mr. Butler related how he had chased after defendant with a shotgun and found defendant, somewhat dazed, inspecting the damage to his own car. Mr. Butler said that he did not see any white tablets on the floor of the car when he inspected it to determine whether defendant might have a weapon available. It was at this time, according to Mr. Butler, that Officer Erwin arrived on the scene. Mr. Butler testified that Officer Erwin did not conduct a search of defendant's vehicle but immediately, upon learning of the hit and run accident, placed defendant under arrest, handcuffing him and placing him in the police car. Another officer arrived whom Mr. Butler said he would not be able to recognize. This officer went directly to the Volkswagen, raised the front cover of the car, looked inside and closed it. Following this action, the new policeman on the scene entered the interior of the car with a flashlight, raised the floor mat and said "ah ha, look what I've got here." On cross-examination by the prosecutor, Mr. Butler reiterated that Officer Erwin never searched the car. The witness further stated that he did not remember seeing defendant enter his car.
Finally defendant testified, stating that when Mr. Butler approached him with the shotgun, he was outside his car somewhat dazed and very frustrated with himself for having had the accident. He said that there was no contraband in plain view inside the automobile and that Mr. Butler was in a position to have seen it had there been. Defendant Roberds testified that he retrieved his license from his right rear pocket where he always kept it and gave it to Officer Erwin. Defendant believed that, upon receiving his license, Officer Erwin radioed headquarters and found that there was a traffic attachment on defendant. Mr. Roberds said that when Officer Erwin arrested and handcuffed him, the policeman did not say why he was making the arrest but did say something about a traffic attachment. While defendant was handcuffed and seated in the police car, other officers arrived and searched his car. It is unclear from defendant's testimony whether he means that more than one officer arrived later or that another officer arrived who, together with Officer Erwin, searched the car. Mr. Roberds admitted that he had quaaludes in his car and stated that the contraband was in a plastic bag under the floor mat from which location it was retrieved. *717 Defendant testified that he did not personally see the white tablets removed from his automobile, but knew that they had been located under the floor mat.
At the close of the hearing the trial judge denied the motion to suppress and defendant entered a guilty plea to the reduced charge.
Defendant argues, correctly, that the trial judge improperly allocated the burden of proof at the hearing on the motion to suppress. Code of Criminal Procedure article 703 provides that at the hearing on a motion to suppress the defendant has the burden of proof with the specific exception that the burden rests on the state to prove that a confession or inculpatory statement was made freely and voluntarily. The Official Revision Comment notes that no attempt has been made to deal with other possible exceptions to the general rule of burden of proof: that the burden is on the movant.
In State v. Franklin, 353 So.2d 1315 (La. 1977), however, we addressed the issue of who bears the burden of proof at a suppression hearing involving a warrantless search and held:
"[O]nce the defendant makes the initial showing at a motion to suppress hearing that a warrantless search occurred, the burden of proof shifts to the State to affirmatively show that the search is justified under one of the narrow exceptions to the rule requiring a search warrant." 353 So.2d at 1318-19.
Since Franklin, we have decided numerous cases on this same issue. E. g., State v. MacDonald, 390 So.2d 1276 (La.1980); State v. Jernigan, 390 So.2d 1306 (La.1980); State v. Robinson, 386 So.2d 1374 (La.1980); State v. Hatfield, 364 So.2d 578 (La.1978); State v. Banks, 363 So.2d 491 (La.1978); State v. Braud, 357 So.2d 545 (La.1978).[1]
In the case before us, defense counsel and the trial judge haggled throughout the hearing regarding upon which side the burden of proof rested. Ultimately, the judge stated that under Article 703 the defendant has the burden of proof. After expressing his opinion that the defendant bore the burden of proof, the trial judge denied the motion to suppress. Apparently the judge did not consider that the defendant had carried the burden.
As we have held on numerous occasions, once defendant establishes that a warrantless search occurred, the burden of proof shifts to the state to affirmatively establish that one of the exceptions to the warrant requirement is applicable. The trial judge in the case before the bar committed error in placing the burden upon the defendant.
As noted above, defendant and Officer Erwin related markedly different versions of the circumstances surrounding the finding of the quaaludes. In the usual situation, such divergence in testimony presents an issue of fact to be determined by the trial judge and his determination will not be overturned by this Court absent a clear abuse of the much discretion granted him. The trial judge who had an opportunity to observe the demeanor of the witnesses while they were testifying is in a better position to assess their credibility. State v. Robinson, supra. The improper allocation of the burden of proof in the instant case prompts us to give the trial judge's determination less than the heavy presumption that his view of the evidence is correct.
Normally, when defendant and the police offer contradictory testimony, we recognize that defendant's statements are apt to be self-serving and view them with a certain degree of skepticism. At the same time, we keep in mind that the policeman may be attempting to justify an overzealous attempt to ferret out crime.
In the instant case, however, we are not presented with the typical situation for three reasons. First, as previously explained, *718 the trial judge improperly allocated the burden of proof to defendant. Secondly, the testimony of Mr. Butler tends to corroborate that of defendant. We would expect this witness to be hostile to defendant based on his unfortunate experience as the victim of defendant's hit and run accident. Instead of testifying in an antagonistic manner, Mr. Butler related essentially the same version of the encounter with the police as did defendant. This is the same man who chased defendant with a shotgun following the collision.[2] Finally, we stress that, despite the burden placed upon the state by the jurisprudence and the testimony of the impartial victim Mr. Butler, the prosecutor did not call as a witness the policeman identified by defendant and Mr. Butler as the individual who searched the automobile and retrieved the white tablets. Under these circumstances, the evidence preponderates in favor of the version of events as related by defendant and the victim of the hit and run accident. It is more likely than not that the police entered the car to search for drugs and discovered the quaaludes only after raising the floor mat. A warrantless search took place and the evidence does not indicate that the search fits any of the limited exceptions to the warrant requirement.
Defendant had argued in the alternative that the white tablets were not subject to seizure even if in plain view because the policeman picked up one and examined it to ascertain the manufacturer's code number. See State v. Meichel, 290 So.2d 878 (La. 1974). Defendant contends that the tablets were not immediately known to be contraband. Because we reverse the ruling on the motion to suppress on other grounds, we do not reach this argument.

Decree
We reverse the ruling on the motion to suppress. Defendant entered his guilty plea contingent upon our review of the trial judge's denial of the motion to suppress. Our reversal of that ruling requires that we void defendant's guilty plea so that his conviction is reversed. We remand the case to the trial court for proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
NOTES
[*] Judges Cecil C. Cutrer, Jimmy M. Stoker, and Ned E. Doucet, Jr., of the Court of Appeal, Third Circuit, participated in this decision as Associate Justices ad hoc, joined by Chief Justice John A. Dixon, Jr. and Associate Justices Pascal F. Calogero, Jr., James L. Dennis and Jack C. Watson.
[1] C.Cr.P. art. 703 was recently amended, Acts 1980, No. 431, and now specifically provides "... the state shall have the burden of proving the admissibility of a purported confession or statement by the defendant or of any evidence seized without a warrant." (emphasis supplied).
[2] We realize that tempers cool with the passage of time and any animosity felt by Mr. Butler toward defendant at the time of the accident (November 19, 1979) would most likely have lessened by the date of the hearing on the motion to suppress (February 26, 1980).