11 DREW, J.
After a jury trial, the defendant was convicted of possession of a Schedule I, controlled dangerous substance (marijuana) with intent to distribute, a violation of La. R.S. 40:966. The trial court sentenced the defendant to 15 years at hard labor and ordered said sentence to run consecutively to any other sentences.
The defendant now appeals his conviction and sentence, urging four assignments of error. Finding no merit in any of these claims, the defendant’s conviction and sentence are affirmed.

TESTIMONY OF DETECTIVE SCOTT TUCKER

On July 11, 1997, at around 7:30 p.m., Detective Scott Tucker and Officer Shane Waites of the Minden Police Department were riding in an unmarked police unit near Peach and Taitón Streets in Minden. *778 Tucker and Waites were following Detective Weaver and Officers Matteson and McGowan of the Minden Police Department, who were in a marked unit. Weaver had previously received information regarding a subject selling drugs in the area.
Tucker and Waites were stopped at a stop sign on Peach Street when they observed the marked unit turn around and begin following an older model green Chevrolet Impala. According to Tucker, Waites, Weaver, and Matteson, the green vehicle then accelerated and made a left turn at the stop sign while traveling at a high rate of speed. The green vehicle then lost control and hit a parked car and ran into a building. The defendant then exited the green vehicle as it was still rolling and fled on foot. Tucker testified that Kamesha Lott was in the front passenger seat and Lakita Coleman was in the back seat of the green vehicle.
When the defendant fled from the vehicle, Tucker told Waites to chase him. Weaver and Matteson also participated in the foot pursuit of the defendant. Tucker and McGowan secured the two females. Tucker then got into the marked unit and attempted to “head off’ the defendant, whom Waites caught after a few moment’s |¡»chase. Defendant Thomas discarded 26 small Baggies filled with vegetable-like material, as he sought to escape.
After the two females were placed under arrest (the record is unclear as to exactly what for), Tucker found, incident to their arrest, approximately 100 to 200 Baggies in the purse of Lakita Coleman, along with marijuana residue. None of the marijuana seized this date was apparently ever weighed by the police.
According to Tucker, Weaver seized only $74.00 total from some combination of the three defendants. Tucker testified, in response to a defense question, that the street value of the marijuana seized was $310.00.
According to the crime lab report, the 26 small bags and one larger bag all contained marijuana, a Schedule I, Controlled Dangerous Substance. Some marijuana residue was noted from one of the small Baggies seized from the purse of Lakita Coleman.

TESTIMONY OF DETECTIVE DAN WEAVER

Detective Dan Weaver testified that during the foot pursuit of defendant, he witnessed defendant throw down several bags, which later proved to contain marijuana. As defendant went over a fence, he removed several more bags of marijuana from his pocket and threw them to the ground. As the other officers continued pursuit of the defendant, Detective Weaver stopped and picked up 26 small bags of marijuana discarded by the defendant.
Weaver was accepted as an expert in the field of packaging, distribution, and sale of marijuana. In his opinion, the 26 bags of marijuana discarded by the defendant were packaged for the sale or distribution to others. Weaver explained that the bags would not be consistent with a person consuming the marijuana for personal use because when marijuana is purchased for personal use the buyer usually buys one $10.00 bag or a $35.00 bag.
|sHe testified that the bags found in Coleman’s purse are “apple Baggies” which are used for packaging drugs, explaining that the Baggies could be used for packaging $10.00 worth of marijuana or one rock of cocaine for sale. These bags cannot be purchased in a “regular” store, but rather at a novelty shop, as they are only used for narcotics, according to Weaver.
On cross examination, Weaver testified that defendant never disappeared from his view once he exited the still-moving vehicle, and that he distinctly remembered the defendant pulling the bags of marijuana from his pocket with his right hand because he was afraid that defendant was reaching for a gun. Weaver admitted that his report only mentioned that defendant *779 .threw the drugs down and not that he took them out of his pocket. There was no fingerprint analysis performed on any Baggies.
Weaver also omitted from his report that, after arresting Thomas, Officer Waites found a larger bag of marijuana in defendant’s front right pocket, which could normally be consistent with personal use since it contained approximately $50.00 of loose marijuana, but further testified that in this situation he considered the larger bag to be inconsistent with personal use, because of it being found in close proximity to the 26 small bags of marijuana and the extra Baggies.

TESTIMONY OF OFFICER SHANE WAITES

Officer Shane Waites identified the defendant as the driver of the vehicle, whom he chased and captured without the defendant ever leaving his sight. Waites was in uniform and identified himself as a police officer eight to ten times during the chase. While being pursued by Waites, the defendant appeared to take some small bags out of his front right pocket and throw them on the ground. Waites did not stop to pick up these items, but continued to pursue the defendant for approximately three blocks.
|4Waites finally tackled defendant in an open area and immediately placed him under arrest. Waites searched the defendant and found the larger bag hanging out of his right pants pocket, which he gave to Detective Weaver. Waites had observed the bag while he was chasing the defendant.

TESTIMONY OF OFFICER TONY MATTESON

Officer Matteson also identified defendant as the person he came into contact with on July 11, 1997. After defendant fled from his car, Matteson blocked defendant’s car with his car and then proceeded to chase defendant on foot. Matteson observed defendant- throw some small bags out of his right front pocket. Matteson did not stop to pick up the bags, but instead continued in the foot pursuit. Several times during the foot pursuit, Matte-son identified himself as a police officer and told defendant to stop running.
Matteson had no doubt in his mind that the items defendant discarded came from his pocket. Matteson testified he observed a larger bag in defendant’s front right pocket when Officer Waites was handcuffing him and getting him up off of the ground. He observed Waites seize this bag from the defendant’s front right pocket.

DISCUSSION

Assignment of Error # 1 — The trial court was in error in convicting Reginald Jerome Thomas of possession with intent to distribute marijuana, in the absence of any evidence of distributing marijuana or any attempt to distribute marijuana.
By this assignment of error, the defendant in effect contends that the evidence was insufficient to convict him of possession with intent to distribute marijuana, arguing that the evidence does not support his conviction for possession of marijuana with intent to distribute, but rather only the responsive verdict of possession of marijuana.
1 RWhen issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have *780 been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
A defendant “may move for a post verdict judgment of acquittal following the verdict.” La.C.Cr.P. art. 821. The record does not indicate that the defendant here made such a motion, but does contain an assignment of error which contends that the evidence was insufficient to prove the defendant’s conviction. Appellate review is mandated by the assignment of error of the sufficiency of the evidence to convict whether or not the defendant exercised his La.C.Cr.P. art. 821 option in the trial court. La.C.Cr.P. art. 920; State v. Green, 28,994 (La.App.2d Cir.2/26/97), 691 So.2d 1273, J. Hightower concurring.
Under Jackson v. Virginia, supra, the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992).
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence |fiin such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Lott, 535 So.2d 963 (La.App. 2d Cir.1988).
La. R.S. 15:438 provides that when circumstantial evidence is used to convict, every reasonable hypothesis of innocence must be excluded; however, this statutory rule is not a separate test from the Jackson standard and does not establish a stricter standard of review. Rather, all the evidence, both direct and circumstantial, must be sufficient to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. State v. Porretto, 468 So.2d 1142 (La.1985); State v. Gladney, 29,791 (La.App.2d Cir.9/24/97), 700 So.2d 575; State v. McKnight, 539 So.2d 952 (La.App. 2d Cir.1989), writ denied, 548 So.2d 322 (La.1989).
 This court’s authority to review questions of fact in a criminal case is limited to the suffieiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const, art 5, § 5(C); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, supra; State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (1987).
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Brown, 29,708 (La.App.2d Cir.9/24/97), 702 So.2d 744, writ denied, 97-2549 (La.1/30/98), 709 So.2d 703; State v. Ford, 28, 724 (La.App.2d Cir.10/30/96), 682 So.2d 847, writ denied, 99-0219 (La.5/14/99), 745 So.2d 12.
Flight and attempt to avoid apprehension indicate a consciousness of guilt. Therefore, they are one of the circumstances from which a juror may infer guilt. State v. Fuller, 418 So.2d 591 (La.1982); State v. Davies, 350 So.2d 586 (La.1977).
To support a conviction for possession with intent to distribute, the state must prove: (1) possession of the controlled *781 dangerous substance; and (2) intent to distribute it. La. R.S. 40:967 A(l); State v. Gladney, supra; State v. Lee, 25,917 (La.App.2d Cir.5/4/94), 637 So.2d 656, writ denied, 94-1451 (La.10/7/94), 644 So.2d 631; State v. Tyler, 544 So.2d 495 (La.App. 2d Cir.1989).
In brief, defendant admits that the evidence supports a conviction for possession of marijuana. Furthermore, Detective Dan Weaver, Officer Shane Waites, and Officer Tony Matteson testified that they witnessed the defendant throw down bags which were later determined to contain marijuana. Moreover, Officer Waites testified that when he arrested and searched the defendant, he found a large bag in defendant’s front pants pocket, which was later determined to contain marijuana. Officer Matteson testified that he observed Officer Waites seize this bag from defendant’s front pants pocket. Thus, the first element of the crime, possession of the controlled dangerous substance, has been clearly established.,
Proof of the second element of this crime is not as simple. The test for determining whether intent to distribute exists includes five factors: (1) packaging in a form usually associated with distribution; (2) evidence of other sales or attempted sales by the defendant; (3) a large amount or quantity of the drug such as to create a presumption of intent to distribute; (4) expert or other testimony that the amount was inconsistent with personal use; and (5) the existence of any paraphernalia, such as Baggies. State v. House, 325 So.2d 222 (La.1975); State v. Gladney, supra; State v. Lowery, 609 So.2d 1125 (La.App. 2d Cir.1992), writ denied, 617 So.2d 905 (La.1993). Testimony of the street value and dosage of the drug is also relevant to the issue of intent. State v. Tornabene, 337 So.2d 214 (La. 1976); State v. Gladney, supra. Here, we have factors (1), (4) and (5). The actual amount of drugs will never be known, because the drugs were never weighed.
Detective Weaver, who was tendered as an expert in the field of packaging, distribution and sale of marijuana, testified that the 26 bags of marijuana discarded by the defendant were packaged for the sale of distribution to others, and that the larger bag of marijuana was not consistent with personal use considering its proximity with the other seizures this date. The state presented no evidence of sales or attempted sales of drugs by the defendant. Defendant discarded 26 “dime” bags of marijuana. According to Detective Tucker, at the time of defendant’s arrest, a larger bag of marijuana was found in defendant’s pocket valued at approximately $50. Detective Tucker further opined, also not as an expert, that the street value of all the marijuana seized was $310.00. Detective Weaver also testified that the small Baggies found in Lakita Coleman’s purse were used for packaging narcotics. Thus, the evidence clearly preponderates that defendant possessed the marijuana with intent to distribute pursuant to factors found here in this situation. But could a reasonable trier of fact discern from this record the intent to distribute, beyond a reasonable doubt? A look at two very similar recent cases is helpful.

THE LARRY GREEN CASES

Similar, though distinguishable, State v. Green, 508 So.2d 602 (La.App. 2d Cir.1987) occurred in Morehouse Parish, in 1982, wherein Mr. Green was caught with 10 small Baggies of marijuana inside a larger bag, total weight of the contraband being 1.62 ounces. There was no testimony as to value, and the state’s expert, Sgt. Freeman, stated: “Marijuana in this form (small plastic bags) was usually associated with marijuana possessed for distribution to others.” This court |9pointed out that the packaging could also be consistent with recently purchased marijuana. There was no proof of distribution nor any additional paraphernalia found. This court reduced the conviction to the misdemeanor of possession of marijuana.
*782 Also similar, but distinguishable from our case, is State v. Green, 524 So.2d 927 (La.App. 2d Cir.1988), writ denied, 532 So.2d 129 (La.1988), which occurred in De-Soto Parish in 1984. This Mr. Green was caught with 51 cigarettes and a small amount of loose marijuana. The state’s expert, Lt. Davidson, stated that “Marijuana was sold in this form in DeSoto Parish.” Not surprisingly, the defense expert testified that “this amount was not inconsistent with personal use.” This court again noted that this amount was not inconsistent with marijuana recently purchased. Total weight of the marijuana here was one-third of an ounce. This court reduced the conviction to the misdemeanor of possession of marijuana and the La. Supreme Court denied writs.
In the instant case, the state presented expert testimony that the amount of marijuana'possessed by the defendant was inconsistent with personal use. There was admittedly no testimony of distribution or attempted distribution. The marijuana here was never weighed, making it difficult to compare this situation with the two Green cases. There were additional Baggies found here, but on a separate defendant, and only a relatively small amount of money seized from the three occupants of the vehicle.
This is certainly a close case, but the instant jury obviously found the testimony of the police officers to be credible. This court should not second-guess the credibility determinations of the jury, which was able to view the evidence and the witnesses. A rational trier of fact, viewing the evidence in the light most favorable to the state, could certainly have found the essential elements of the crime |inof possession of marijuana with intent to distribute established beyond a reasonable doubt.
This assignment of error is without merit.
Assignment of Error # 2 — The trial court was in error in failing to grant Reginald Jerome Thomas’s Motion for Mistrial because of statements of the State of Louisiana in closing argument.
In brief, defendant withdrew this assignment of error. Thus, it will not be considered.
Assignment of Error # 3 — The [t]rial [c]ourt was in error in sentencing Reginald Jerome Thomas. The sentence given to him is excessive.
Defendant contends that his sentence of 15 years at hard labor is not appropriate for possession of such a small amount of marijuana, without any proof of distribution of marijuana.
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const, art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864; State v. Davis, 28,662 (La.App.2d Cir.9/25/96), 680 So.2d 1296.
A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of discretion, this court does not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Washington, 29,478 (La.App.2d Cir.4/2/97), 691 So.2d 345; State v. Henton, 28,576 (La. App.2d Cir.9/25/96), 682 So.2d 777, writ denied, 96-2590 (La.3/27/97), 692 So.2d 391.
The trial court ordered a pre-sentence investigation, which it considered, allowing *783 the defendant to make a statement. At that time, defendant expressed his concerns about why he and his witness were not allowed to take the stand during the trial. The trial court then explained to the defendant that it was not its decision to decide what witnesses are called.
Defendant then made a statement concerning his two convictions for attempted second degree murder in 1991. According to the defendant, it was not his intention to kill anyone, but rather to shoot at someone who had shot at him. Defendant further explained that he was young at the time and that no one was hurt. The defendant further stated that at the time of the instant offense, he was attending nursing school at Bossier Parish Community College.
The trial court considered three letters that it received from defendant’s mother and attached said letters to the PSI.
The trial court noted that at the time of the instant offense, the defendant was 25 years old. The trial court noted the facts of the instant offense and found significant the fact that defendant fled from the officers. The trial court further noted that at the time of the instant offense, defendant was still on parole for his attempted murder convictions.
The trial court noted that defendant has no juvenile record, and that as an adult, he had been arrested several times beginning in 1989, but that the charges were either dismissed or nol-prossed. The trial court did not go into detail concerning defendant’s arrests because they were not convictions. The trial court noted that on February 12, 1992, the defendant pled guilty to two counts of attempted second degree murder and was sentenced to 10 years at hard labor on each count, with said sentences to run concurrently.
|12The trial court noted that the PSI indicated defendant’s mother as his only family, further noting defendant’s denial of any prior history of assaultive or violent behavior, despite the fact that he was convicted of two counts of attempted second degree murder. The trial court further noted the defendant’s belief that the only reason he was convicted was because he was poor and was unable to hire an attorney to represent him. The trial court stated that in its opinion the defendant was ably represented by his attorney. The trial court noted that the defendant completed the 12th grade and attended nursing school at Bossier Parish Community College for one year.
The trial court considered the provisions of La.C.Cr.P. art. 894.1 and found:
★ There was an undue risk that defendant would commit another crime if he was given a suspended sentence or placed on probation since he was on parole when the instant offense was committed.
★ Defendant was in need of correctional treatment that can be provided most effectively by his commitment to an institution.
★ A lesser sentence would deprecate the seriousness of the crime.
★ There were no grounds which would excuse or justify the defendant’s conduct in this case.
★ Defendant had a prior criminal history.
★ Defendant’s criminal conduct was the result of circumstances likely to recur and that he was not likely to respond affirmatively to probationary treatment.
★ Defendant’s incarceration would not create an excessive hardship to defendant or any dependents because it found that defendant has no dependents.
After sentencing, defendant filed a motion to reconsider sentence, which was denied.
The statutory range of punishment for possession of marijuana with intent to distribute is a term of imprisonment at hard labor for not less than five years nor more than 30 years and a payment of a fine of *784 not more than $50,000.00. La. R.S. 40:966(B)(2). The trial court sentenced defendant to 15 years at hard labor and | ¶ ¡¡ordered said sentence to run consecutively to any other sentences that defendant was serving. Defendant was not ordered to pay a fine.
Based on the reasons of the trial court and defendant’s criminal history, this court can not say that defendant’s mid-range sentence here is constitutionally excessive or an abuse of the trial court’s wide discretion. This assignment of error is without merit.
Assignment of Error #4 — All errors patent on the face of the record.
By this assignment of error, the defendant requests that this court review the record for errors patent.
A request for error patent review is unnecessary because such a review is made automatically in all criminal cases. State v. Bryant, 29,344 (La.App.2d Cir.5/7/97), 694 So.2d 556; State v. Stamper, 615 So.2d 1359 (La.App. 2d Cir.1993), modified on other grounds, 624 So.2d 1208 (La.1993). We have examined the record for error patent, La.C.Cr.P. art. 920(2), and found none. Therefore, this assignment of error is without merit.

DECREE

For the foregoing reasons, defendant’s conviction and sentence are AFFIRMED.
NORRIS, C.J., concurs in the result.
APPLICATION FOR REHEARING
Before NORRIS, C.J., and STEWART, CARAWAY, PEATROSS, and DREW, JJ.
Rehearing Denied.