843 So.2d 592 (2003)
STATE of Louisiana, Appellee,
v.
Roy James WILLIS, Appellant.
No. 36,759-KA.
Court of Appeal of Louisiana, Second Circuit.
April 9, 2003.
*594 Carey J. Ellis, III, Louisiana Appellate Project, for Appellant.
Richard Ieyoub, Attorney General, Robert W. Levy, District Attorney, Stephen Kendall Hearn, Jr., Assistant District Attorney, for Appellee.
Before BROWN, GASKINS, and PEATROSS, JJ.
BROWN, C.J.
The state initially filed a bill of information charging defendant, Roy James Willis, and two co-defendants, Corey O'Neal Cooper and Joseph Robert Brawley (a/k/a Tomica Laray Booker), with possession of marijuana with intent to distribute, a violation of La.R.S. 40:966. Thereafter, the state filed an amended and severed bill of information, charging defendant with possession of marijuana with intent to distribute and possession of a firearm by a convicted felon, a violation of La.R.S. 14:95.
A jury convicted defendant of both offenses. Defendant was adjudicated to be a second felony habitual offender. On count one, possession of marijuana with intent to distribute, he was sentenced to 25 years at hard labor, with the first five to be served without benefit. This sentence was to run consecutively with the 15-year without benefit hard labor term imposed on count two.
Defendant has appealed. We affirm defendant's convictions and with an amendment, affirm his sentences.

Discussion
Sufficiency of the Evidence
To support a conviction for possession with intent to distribute, the state must prove: (1) possession of the controlled dangerous substance; and (2) intent to distribute it. La.R.S. 40:967(A)(1); State *595 v. Thomas, 32,495 (La.App.2d Cir.10/27/99), 745 So.2d 776, writ denied, 00-1008 (La.11/27/00), 775 So.2d 445, writ denied, 00-0242 (La.12/08/00), 775 So.2d 1076.
The elements which must be proven in order to convict an accused of unlawful possession of a firearm by a convicted felon are: (1) possession of a firearm; (2) conviction of an enumerated felony; (3) absence of the ten-year statutory period of limitation; and (4) general intent to commit the offense. La.R.S. 14:95.1; State v. Husband, 437 So.2d 269 (La.1983).
The testimony of Lincoln Parish Deputy Sheriffs Johnny Murad and Chad Alexander, and that of co-defendant, Corey Cooper, established the following: The arrests occurred in the late afternoon hours of May 7, 2001, at the Comfort Inn in Ruston, Louisiana. Deputy Kenneth Wesley received word from a confidential informant that Corey Cooper, who had several outstanding bench warrants, was in the area of the Comfort Inn, and was traveling in a grey van. Deputies Murad and Wesley saw a grey van leaving the motel parking lot and made a traffic stop. The driver of the van, Henry Fisher, provided information that Cooper was in Room 127 of the Comfort Inn and that there was a weapon as well as other people in the room. The deputies called for backup.
When the other officers arrived, Deputies Murad and Alexander knocked on the door of room 127. A man (later identified as Brawley/Booker) opened the door and, when Deputy Murad identified himself, the man cursed and tried to slam the door shut. Brawley then opened the door and fled into the hallway. Deputies Murad and Alexander immediately saw Cooper, who Dy. Murad recognized from previous contact. Cooper went to the floor and remained seated with his hands in the air. Dy. Murad observed another man (identified at trial as defendant) in the bed under the bed covers. As the deputies approached the bed they ordered defendant to show his hands. Defendant, who was clad in his underclothes, was reluctant to show his hands. After both Cooper and defendant were handcuffed, Dy. Alexander pulled back the bed covers and found a .38 caliber Model 10 Smith and Wesson revolver located near where defendant's left hand had been. The deputies checked the weapon for ammunition; the gun contained six rounds in the chamber/cylinder. Located on the other bed were some duffle and/or luggage type bags.
In plain view on the desk/table was a plastic bag. There were two small bags of marijuana in that plastic bag, along with loose marijuana (a total of about a pound). Also in plain view on top of the desk were a set of scales and cash. In one of the drawers of the dresser immediately adjacent to the table were eight bags of marijuana, containing approximately one pound per bag, in "brick" form. More plastic bags were also found. A further search of the room revealed that the trash can near the bathroom area contained Saran Wrap, duct tape and dryer sheets (which Dy. Murad related were all commonly used to pre-package marijuana in brick form). Currency, which consisted of mostly fives, tens, and twenties, totaling $2,320, was found. Defendant's wallet contained $200. Neither of the other suspects had any money on them.
At trial, Deputy Murad identified the evidence collected and was qualified as an expert in the manner in which illegal drugs are handled. He testified that digital scales are used to weigh and measure drugs for subsequent sale. Dy. Murad noted that the large bag contained both loose and two smaller sandwich-type bags of marijuana. Dy. Murad stated that repackaging *596 usually means that the marijuana is for resale and/or distribution.
Dy. Murad stated that, if sold in brick form in Lincoln Parish, a pound of marijuana would sell for $500 or more. He further testified that the entire quantity of marijuana seized would make about four or five thousand marijuana cigarettes.
Dy. Murad stated that the only personal effects recovered from the motel room belonged to defendant. These effects were clothing, a notebook containing mail received by defendant at a Dallas address, a Day Runner organizer and a pager. Three cell phones were recovered from the motel room. Deputy Murad testified that pagers and cell phones are commonly used by persons involved in the sale of narcotics. Chemical tests performed by the North Louisiana Criminalistics Laboratory determined that all of the suspected marijuana, as well as all items containing suspected marijuana residue, which were seized and identified by Dy. Murad, were in fact marijuana. Fingerprints were not taken from the gun because it had been handled by the deputies (to make it safe).
On cross-examination, Deputy Murad testified that the motel room was registered to "Corey Jones," who is also known as Corey Cooper. Deputy Alexander's trial testimony corroborated that of Dy. Murad.
Corey Cooper testified for the state. Cooper stated that the day before defendant's arrest at the Comfort Inn, he saw defendant in Woodland Park in Ruston selling marijuana out of the grey van. Later that day, Cooper accompanied defendant to the Comfort Inn. Using his picture I.D., Cooper registered for two rooms which were paid for by defendant. Cooper and a female companion stayed in a room on the second floor of the motel and defendant and Fisher stayed in a room on the first floor. Booker/Brawley rented and stayed in a room adjacent to defendant's. Cooper saw defendant and Fisher sleeping in defendant's room early the next morning, when he went to borrow the keys to the van so he could take his female friend home. Cooper next saw defendant around one in the afternoon when he returned the keys to defendant's room. Later that afternoon, Cooper went back to defendant's room because he needed a ride home. Defendant was in the motel room with Booker/Brawley and they told Cooper that Fisher had left in the van. Cooper remained in defendant's room until the officers arrived, around 15 minutes later. Cooper stated that the weapon was defendant's and denied bringing the gun into the room. Cooper admitted that he knew there was marijuana in the room because he saw it on the desk. He didn't know, however, that there was another eight or so pounds of marijuana in the desk drawer. He pled guilty to possession of marijuana with intent to distribute. Cooper had not been sentenced as of the date of trial and stated that he had not been promised any particular sentence in exchange for his testimony. He admitted to several previous felony convictions.
The state also called as a witness David Robison, a district parole officer with the Texas Department of Criminal Justice. Officer Robison identified defendant as one of his parolees. Specifically, he stated that defendant was on parole in connection with a guilty plea (or guilty verdict) entered on July 14, 1987, for: (1) an aggravated robbery committed on April 12, 1987, for which defendant was sentenced to 25 years imprisonment with the Texas Department of Corrections; (2) an aggravated robbery committed on April 12, 1987, for which defendant was sentenced to 25 years imprisonment, to be served concurrently with the sentence imposed for the April 12, 1987, robbery; (3) an aggravated robbery committed on April 20, 1987, for which *597 defendant was sentenced to 25 years imprisonment to be served concurrently with the other sentences. Officer Robison noted that defendant was released on November 19, 1999, on "mandatory supervision" until May 14, 2012. Certified copies of the convictions were introduced into the record.
The defense presented the testimony of Tomika Laray Booker (a/k/a Joseph Brawley), who had also pled guilty to possession of marijuana with intent to distribute. Booker testified that the marijuana in Room 127 belonged to him. He stated that he, Cooper and Willis were in Dallas, Texas, for the weekend and that Cooper and Willis drove the marijuana to Louisiana in the grey van. Booker and Fisher drove to Louisiana in a Buick Riviera. Booker said that he knew Fisher by his last name and that defendant and Fisher "had business together." Booker stated that Cooper was supposed to be "getting rid of it," but he tried to sell it in ounces and that was taking too long. Booker stated that he was at the motel room to get his marijuana back from Cooper. He denied that defendant was involved in the marijuana deal, stating that defendant was "caught up in the mix" over some dogs.[1] Booker also testified that the gun belonged to Cooper.
The standard for a reviewing court when defendant asserts that the evidence was insufficient is whether the evidence, viewed in the light most favorable to the prosecution, was sufficient for the jury to reasonably conclude that all of the elements of both offenses were proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
This standard of review, now legislatively embodied in La.C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/04/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442.
In State v. Dunn, 30,560 (La.App.2d Cir.02/25/98), 709 So.2d 852, 857, this court stated:
As a general principle of Louisiana law, a conviction can be sustained on the uncorroborated testimony of a purported accomplice. However, when the state's case relies upon the uncorroborated testimony of a purported accomplice, the trial judge (or jury) should treat such testimony with great caution. This great caution is not required if there is evidence that confirms material points in an accomplice's tale, and confirms the defendant's identity and some relationship to the situation. (Citations omitted).
The marijuana was in the motel in which defendant was staying. Defendant was undressed and lying in bed and the only personal effects (other than two cell phones) in the room were defendant's. The marijuana was in plain view, and defendant had knowledge of its existence. See State v. Alford, 323 So.2d 788 (La. 1975); State v. Cann, 319 So.2d 396 (La. 1975). Defendant's actual possession was established by the testimony of Corey Cooper, who stated that the marijuana belonged to defendant. Since there was no internal contradiction or irreconcilable conflict with the physical evidence, this one *598 witness's testimony, obviously believed by the jury, is sufficient support for a requisite factual conclusion. See State v. White, 28,095 (La.App.2d Cir.05/08/96), 674 So.2d 1018, writ denied, 96-1459 (La.11/15/96), 682 So.2d 760, writ denied, 98-0282 (La.06/26/98), 719 So.2d 1048. Although Cooper was an accomplice, his testimony is not uncorroborated; the facts surrounding the crimes clearly support his testimony. As noted by the court in State v. Smith, 661 So.2d at 443, it is not this court's function to reassess credibility or reweigh the evidence. We further find that the state sufficiently proved defendant's intent to distribute. Cooper stated that defendant was in fact selling marijuana out of the grey van.
The record also supports the finding of sufficient evidence to support the jury's conclusion that defendant was guilty of count two, unlawful possession of a firearm by a convicted felon. See State v. East, 99-1379 (La.App. 5th Cir.07/25/00), 768 So.2d 173, writ denied, 01-3025 (La.10/15/02), 827 So.2d 1167, and cases cited therein. Direct evidence in the form of testimony by both deputies clearly proved that the firearm was subject to defendant's dominion and control. The gun was located under the covers in close proximity to defendant's left hand. Further, Cooper testified that the gun belonged to defendant. This assignment of error is without merit.
Use of More Than One Prior Conviction
Prior to the reading to the jury of the bill of information charging defendant as a felon in possession of a firearm, defendant offered to stipulate the validity of the predicate offenses as contained in the bill of information.
Defendant's second assignment of error is that the trial court erred in denying his objection to the state's mentioning in front of the jury the name and nature of his prior convictions and in allowing the state to use more than one prior conviction to prove that he was a felon in possession of a firearm. Defendant's objection was based upon Old Chief v. United States, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997), in which the Supreme Court held that in a felony possession of a firearm case under 18 U.S.C. § 922(g)(1), the federal government may not reject a defendant's offer to stipulate the prior conviction which would eliminate the need for evidence of the name and nature of the defendant's conviction.
In State v. Ball, 99-0428 (La.11/30/99), 756 So.2d 275, the supreme court distinguished Old Chief in Louisiana prosecutions for violations of La.R.S. 14:95.1. See also State v. Donald, 99-3612 (La.12/08/00), 775 So.2d 1054. In State v. Ball, supra, a prosecution for possession of a firearm by a convicted felon, the supreme court held that the state could introduce evidence of the name and nature of the defendant's prior conviction of simple burglary of an inhabited dwelling, even though the defendant had offered to stipulate that he had been convicted of a prior felony. The court held that proof of one of the enumerated felonies was an essential element of the crime proscribed by La.R.S. 14:95.1. Furthermore, the court held that the convicted felon's specific prior offense was absolutely necessary to fully charge the offense of possession of a firearm by a convicted felon and, therefore, must be contained in the charging instrument.
The Louisiana Supreme Court in State v. Ball held that the court's decision in Old Chief was based not upon constitutional principles which would be binding upon the states, but instead was based upon the specific language of 18 U.S.C. § 922 and that the Louisiana statute, although enacted *599 after 18 U.S.C. § 922, was not patterned after its federal counterpart which, unlike the Louisiana statute, applies to all felonies and does not provide for a prescriptive period. Because proof of one of the enumerated felonies is an essential element of the crime under La.R.S. 14:95.1, the probative value of the name and nature of the prior conviction is greater than the "generic" felony required by the federal statute. The Louisiana Supreme Court further found that acceptance of defendant's stipulation would frustrate the general rule that the prosecution is entitled to prove its case by evidence of its own choice, i.e., "a criminal may not stipulate or admit his way out of the full evidentiary force of the case as the government chooses to present it." (Citations omitted.)
In State v. Sanders, 357 So.2d 492, 493 (La.1978), the supreme court held that the use of more than one prior conviction is permissible as proof of an "essential element" in a possession of a firearm by a convicted felon case. Thus, the use of all three prior felonies was appropriate to prove defendant was a convicted felon.
In light of the above, the trial court did not err in allowing the state to introduce evidence of proof of all of defendant's previous felony convictions. This assignment of error is without merit.
Denial of Motion to Suppress
Defendant next contends that the trial court erred in denying his motion to suppress.
The Fourth and Fourteenth Amendments to the United States Constitution and Article I, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. In general, a search conducted without a warrant is per se unconstitutional. State v. Nolen, 29,284 (La.App.2d Cir.04/04/97), 691 So.2d 379; State v. Cohen, 549 So.2d 884 (La.App. 2d Cir.1989), writ denied, 559 So.2d 135 (La. 1990). Where a warrantless search has occurred, the state has the burden of showing that one of the exceptions to the warrant requirement is applicable. State v. Roberds, 393 So.2d 715 (La.1981). The plain view doctrine is an exception to the warrant requirement. State v. Ray, 471 So.2d 831 (La.App. 2d Cir.1985), writ denied, 475 So.2d 364 (La.1985). The plain view doctrine renders a warrantless search reasonable: (1) if the police officer is lawfully in the place from which he views the object; (2) where the object's incriminating character is immediately apparent; and (3) the officer has a lawful right of access to the object. Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); State v. Nolen, supra.
In the instant case, the law enforcement officers were lawfully at the door of the motel room where the presence of the marijuana was readily apparent. Deputies Murad and Wesley were attempting to locate Cooper, for whom they had an outstanding bench warrant. Dy. Wesley received information from a confidential informant that Cooper was in the area of the Comfort Inn and traveling in a grey van. This information was corroborated by Fisher, who was stopped while driving the grey van in the area of the motel. Fisher provided the room number and information that other persons, marijuana and a weapon were also in the room with Cooper. Once at the hotel room, the fact that an occupant attempted to slam the door, warnings were shouted, and an occupant fled out of the door, leaving it open, was sufficient justification for the deputies to enter the room, in which marijuana and paraphernalia were immediately apparent, in plain view, on the desk or table. This assignment of error is without merit.

*600 Excessive Sentence

According to defendant, the trial court imposed sentences that are unconstitutionally excessive and failed to sufficiently particularize the sentences to him. Furthermore, there was no justification for ordering that the sentences be served consecutively.

Sentence on Count Two, Felon in Possession of a Firearm
For defendant's conviction of count two, felon in possession of a firearm, he was sentenced to 15 years at hard labor without benefit, a fine of $1,000, plus court costs. In sentencing defendant, the trial court noted that it had reviewed the P.S.I. report as well as the addendum. A review of the P.S.I. indicates nine prior arrests and/or convictions dating back to 1980, most of which involve substance abuse, use of dangerous weapons and crimes of violence. The social history reflects that defendant, born in 1950, has a sixth grade education, a sporadic employment history and is divorced with two grown children. The trial court found that defendant was in need of correctional treatment best provided by incarceration, that his behavior knowingly created a risk of bodily harm to others and that a lesser sentence would deprecate the seriousness of the offense. In denying the oral motion to reconsider sentence, the trial court noted that it had considered defendant's age and prior criminal activity.
La.R.S. 14:95.1(B) provides:
Whoever is found guilty of violating the provisions of this Section shall be imprisoned at hard labor for not less than ten nor more than 15 years without the benefit of probation, parole or suspension of sentence and be fined not less than $1,000 nor more than $5,000.
A review of the record does not indicate that defendant's maximum sentence for this offense was unconstitutionally excessive. The crime and punishment, when viewed in light of the harm done to society by convicted felons with firearms, does not shock the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, 29,519 (La.App.2d Cir.04/02/97), 691 So.2d 864.

Sentence on Count One, Possession with Intent to Distribute
After his adjudication as a second felony habitual offender, defendant was sentenced to 25 years at hard labor, with the first five years to be served without benefit. The sentence on count one was ordered to be served consecutively with the sentence on count two.
The habitual offender law is constitutional in its entirety. Therefore, the minimum sentences it imposes upon recidivists are also presumed to be constitutional. State v. Johnson, 97-1906 (La.03/04/98), 709 So.2d 672; State v. Gay, 34,371 (La. App.2d Cir.04/04/01), 784 So.2d 714. The court in State v. Johnson, supra, held that the burden was on the defendant to rebut the presumption that a mandatory minimum sentence is constitutional. To do so, the defendant must clearly and convincingly show that he is exceptional, which in this context means that, because of unusual circumstances, this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense and the circumstances of the case. State v. Johnson, supra at 676.
A review of the record does not reveal that defendant met his burden under State v. Johnson, supra, of rebutting the presumption that his mandatory minimum sentence as a second felony habitual offender is unconstitutional. He has presented no unusual circumstances applicable to his case and sentence, nor has he established that he is exceptional.
*601 Finally, regarding defendant's argument that his sentences should have been concurrent rather than consecutive, we note that it is within the trial court's discretion to order sentences to run consecutively rather than concurrently. State v. Hilbun, 36,048 (La.App.2d Cir.06/12/02), 821 So.2d 530; State v. Robinson, 33,921 (La. App.2d Cir.11/01/00), 770 So.2d 868.
In light of the factors considered by the trial court in sentencing this defendant, we find no error in the court's decision to order that the sentences be served consecutively rather than concurrently. This assignment of error is without merit.
We note, however, that the sentence imposed on count one, possession of marijuana with intent to distribute, which was enhanced as a second felony habitual offender, was illegal in that five years were ordered to be served without benefit. At the time the offense was committed, May 7, 2001, La.R.S. 40:966(B)(2) did not require that the first five years be served without benefit. Acts 2001, No. 403, § 4, which added the "without benefit" provision, was not effective until June 15, 2001. Under La.C.Cr.P. art. 882, this court has the authority to correct the illegal sentence on appeal.

Conclusion
For the reasons set forth above, defendant's convictions are affirmed. Likewise, his sentences are affirmed as amended, deleting the requirement that the first five years of the sentence on count one be served without benefit.
NOTES
[1] According to Booker, Cooper tried to sell some dogs to defendant; the dogs actually belonged to someone else, not Cooper, and the dog owner is the one who got the police involved.