399 So.2d 194 (1981)
STATE of Louisiana
v.
Florain GUIDEN, Jr.
No. 80-KA-2589.
Supreme Court of Louisiana.
May 18, 1981.
Rehearing Denied June 22, 1981.
*196 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Paul Carmouche, Dist. Atty., James C. McMichael, Jr., Asst. Dist. Atty., for plaintiff-appellee.
Marlin Risinger, Jr., Shreveport, for defendant-appellant.
JONES, Justice Ad Hoc.[*]
Following trial by jury, Florain Guiden, Jr., was found guilty as charged on two countsattempted armed robbery (R.S. 14:27, 64) and attempted first degree murder (R.S. 14:27, 30). Subsequently, defendant was sentenced, as a second offender, to be imprisoned at hard labor for 40 years on each count, without benefit of parole, probation or suspension of sentence, with the sentences to run concurrently.
Defendant appeals his conviction and sentence on each count, relying upon five assignments of error.
Facts
On March 15, 1979 at about 1:00 o'clock P.M., two men got into Gary Neeley's taxicab at the Shreveport bus station and designated a general area to which they wished to be transported. Upon reaching their destination one of the passengers demanded Neeley's money, threatening him with a gun. When Neeley refused the demand, the other passenger grabbed the gun from his companion and shot Neeley twice, once in the abdomen and once in the upper arm. Both the assailant and his accomplice fled the scene of the crime.
Neeley gave a description of the two men to police officers on the day of the offense. The following day, while in the hospital, Neeley was shown a photographic lineup and identified the picture of Guiden as the man who shot him. From another photographic lineup, Fair Wayne Bryant was identified as Guiden's accomplice. Arrest warrants were issued for the two men.
Guiden was arrested in Lake Charles, outside his motel room, on March 27, 1979. *197 Bryant was arrested later and charged jointly with Guiden with attempted armed robbery and attempted first degree murder. Upon motion of Guiden severance was ordered and the state proceeded to trial against Guiden alone.

Assignment of Error No. 1
In this assignment the defendant contends that the trial court erred in denying his motion to suppress the victim's in-court identification because it was tainted by an impermissibly suggestive pre-trial identification procedure.
In December 1979 the victim, Neeley, was subpoenaed by the state to appear at Bryant's trial on the amended bill of information. Defendant, a black male, was present in the prisoners' dock of the courtroom, seated by one other individual, a white male. Defendant was allegedly present to discuss a possible plea bargain. Although the Bryant trial was continued, during preliminary court proceedings Neeley had an opportunity to observe the defendant. The victim subsequently informed the assistant district attorney assigned to handle the prosecution of this case that he recognized defendant as the person who shot him.
Even if suggestive identification procedures are proven by the defense, it is the likelihood of misidentification, and not the mere existence of suggestiveness, which violates due process. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State v. Williams, 375 So.2d 364 (La.1979). In State v. Guillot, 353 So.2d 1005 (La.1977), this court announced that it would employ the following five factors set forth in Manson to balance the corrupting effect of a suggestive identification: the witness' opportunity to view the crime; the degree of attention paid by the witness; the accuracy of any prior description; the level of certainty displayed at the confrontation; and the amount of time between the crime and the confrontation.
In this case the record shows that the defendant sat on the front seat of the taxicab next to the victim, who had the opportunity to observe Guiden's face for some 15 or 20 minutes prior to the shooting. The crime occurred during daylight hours and defendant wore no device to obscure his facial features.
Although Neeley told the police that his assailant had "sort of a harelip", on the day following the offense he was able to positively identify defendant during the course of a photographic lineup. Guiden did not, in fact, have a medical harelip. Neeley explained that he appeared to have a scar on his lip, but this did not interfere with his speech.
Based upon these factors, we conclude that the victim's in-court identification of the defendant had a basis independent of any alleged taint that might have resulted from the courtroom encounter in December 1979.
This assignment is without merit.

Assignment of Error No. 2
Defendant argues in this assignment that the trial court erred in refusing to suppress his confession because it was coerced and because the state did not give a proper 768 notice of its intent to offer the confession in evidence.
A review of the testimony adduced at the hearing on the motion to suppress reveals that defendant was informed of his Miranda rights prior to giving the inculpatory statement. Defendant testified that he understood those rights and knew that he did not have to give a statement. His allegations of threats were specifically rebutted by the State. We agree with the trial judge that the State discharged its burden of proving beyond a reasonable doubt that defendant's confession was given freely and voluntarily after defendant was accorded his Miranda rights.
Defendant further argues that his confession was inadmissible because the notice of the state's intent to introduce the confession, pursuant to La.C.Cr.P. Art. 768, was defective since it was given to defense counsel rather than to defendant personally.
*198 According to the record, in response to a motion for discovery, the state filed a response to which was attached a copy of the signed statement given by defendant to the Shreveport police. A copy was forwarded to defense counsel. Hearing on the motion to suppress was held on November 7, 1979, at which the confession was thoroughly discussed. Trial on the merits began on March 31, 1980.
Defendant does not claim that he was either surprised or prejudiced by the state's failure to personally serve him with the 768 notice rather than his counsel. Under the circumstances we find that there was an adequate compliance by the state with Article 768. See State v. Sneed, 316 So.2d 372 (La.1975).
Also in connection with this assignment, the defendant argues for the first time, on appeal, that his confession was inadmissible because he was not timely afforded counsel as required by La.C.Cr.P. Art. 230.1.
Since this issue was not raised in the trial court, the record is barren of any evidence pertaining to the events which transpired between the date of defendant's arrest in Lake Charles, his subsequent transfer to Shreveport and the appointment of counsel in Shreveport.
It was pointed out in State v. Baylis, 388 So.2d 713 (La.1980):
"It is well settled that an irregularity or error cannot be availed of after verdict unless it was objected to at the time of the occurrence, and the party objecting made known to the court the action which he desired the court to take, or his objection to the action of the court, and the grounds therefor. C.Cr.P. 841. A new basis for an objection may not be raised for the first time on appeal."
Following this rationale, we find that defendant has waived this particular objection by failing to raise it in the trial court.
For these reasons, we conclude that this assignment lacks merit.

Assignment of Error No. 3
The basis for this assignment is defendant's complaint that the trial court erred in denying a motion to suppress the revolver seized by the Lake Charles police from the motel room occupied by defendant just prior to his arrest on March 27, 1979.
After arrest warrants were issued for Guiden and Bryant this information was transmitted to the Lake Charles Police Department. Sgt. Declouette of this department received information that the two men were at the Santos Motel in Lake Charles. Declouette and other police officers went to the motel, surrounded the room where the two suspects were believed to be, announced their presence, and ordered the occupants to come outside.
Defendant and another individual (not Bryant) came out of the room and were immediately placed under arrest. Since Bryant had not appeared, the officers entered the motel room to see if he was hiding there. During the course of this check Declouette went into the bathroom and while in the process of looking into the enclosed bathtub noticed a revolver in the open commode. Rather than seizing the gun immediately, the officer had the room secured and left to obtain a search warrant. A search was later conducted pursuant to the search warrant and the revolver retrieved from the commode. In his confession the defendant identified this revolver as the weapon used in shooting Neeley.
At the conclusion of Declouette's testimony, defense counsel orally moved to suppress the revolver, arguing that it was seized as the result of an illegal search. The trial judge considered and then overruled the motion.
Warrantless searches are per se unreasonable unless justified by one of the exceptions to the warrant requirement. Art. 1, § 5, La. Const. of 1974; 4th Amendment, U.S. Const.; Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); State v. Fearn, 345 So.2d 468 (La.1977). Here, the state argues that the revolver could have been legally seized without a search warrant under the plain *199 view exception to the warrant requirement, and that securing the search warrant was unnecessary.
Conditions that must be met for application of the plain view doctrine are: (1) there must be a prior justification for an intrusion into a protected area, (2) in the course of which evidence is discovered inadvertently, and (3) where it is immediately apparent without close inspection that the items are evidence or contraband. State v. Brown, 370 So.2d 525 (La. 1979); State v. Rudolph, 369 So.2d 1320 (La.1979); State v. Fearn, supra.
Was there prior justification for an intrusion by the Lake Charles police officer into defendant's motel room, a protected area? We find that there was. Under certain circumstances immediately following an arrest law enforcement officers without a search warrant may be permitted to conduct a security check for third persons who might destroy evidence or pose a threat to the officers. State v. Holley, 362 So.2d 1089 (La.1978); United States v. Christophe, 470 F.2d 865 (2d Cir. 1972).
It was explained in United States v. Agapito, 620 F.2d 324, 336 (2d Cir. 1980) that:
"The reasonableness of a security check is simple and straightforward. From the standpoint of the individual, the intrusion on his privacy is slight; the search is cursory in nature and is intended to uncover only `persons, not things.' United States v. Bowdach, 561 F.2d 1160, 1168 (5 Cir. 1977). Once the security check has been completed and the premises secured, no further searchbe it extended or limitedis permitted until a warrant is obtained. From the standpoint of the public, its interest in a security check is weighty. The delay attendant upon obtaining a warrant could enable accomplices lurking in another room to destroy evidence. More important, the safety of the arresting officers or members of the public may be jeopardized. Weighing the public interest against the modest intrusion on the privacy of the individual, Pennsylvania v. Mimms, 434 U.S. 106, 108-09, 98 S.Ct. 330, 332, 54 L.Ed.2d 331 (1977); Terry v. Ohio, 392 U.S. 1, 20-21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968), a security check conducted under the circumstances stated above satisfies the reasonableness requirement of the Fourth Amendment."
Here the police officers had arrest warrants for individuals wanted in connection with a shooting and an attempted armed robberysuspects who could be expected to be armed and dangerous. Since only one of those suspects came out of the motel room, there was reason to believe that the other wanted party had remained in the room. Under the circumstances an immediate security check of the motel room was not only justifiable but a prudent measure. Therefore, we conclude that there was prior justification for intrusion into the motel room. Next, the revolver was clearly inadvertently discovered. Finally, it was readily apparent to the officer that the weapon could be evidence connected with the crimes with which the suspects were charged in the arrest warrants.
Having met the requirements of the plain view doctrine, the officer could have seized the revolver immediately. The fact that he took the precaution of securing a search warrant and returning for the weapon does not affect the validity of the search and seizure.
This assignment is without merit.

Assignment of Error No. 4
The defendant argues in this assignment that the trial court erred in allowing the state in closing argument to replay a portion of the defendant's confession.
Where an inculpatory statement was previously admitted into evidence there is no error in permitting a replay of the statement during closing argument. State v. Bonanno, 373 So.2d 1284 (La.1979); State v. Fowlkes, 352 So.2d 208 (La.1977).
This assignment lacks merit.

*200 Assignment of Error No. 5

The defendant contends that the trial court erred in imposing excessive sentences.[1]
Defendant was sentenced, as a second felony offender, to concurrent sentences of forty years for the crimes of attempted armed robbery and attempted first degree murder. As a second felony offender, defendant was subject to a possible sentence of 99 years for the attempted armed robbery and a possible sentence of 100 years for the attempted first degree murder conviction. La.R.S. 14:27, 64; 14:27, 30; 15:529.1.
Article 1, Sec. 20 of the Louisiana Constitution of 1974 prohibits the imposition of excessive punishment. The excessiveness of a sentence is a question of law reviewable by this court under its appellate jurisdiction. State v. LaFleur, 391 So.2d 445 (La.1980); State v. Sepulvado, 367 So.2d 762 (La.1979). Sepulvado further states that adequate review mandates that the trial judge state specific reasons for an apparently severe sentence in relation to the particular offender and the actual offense. While the trial judge need not articulate every aggravating and mitigating circumstance presented in La.C.Cr.P. Article 894.1, the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant. State v. Vaughn, 378 So.2d 905 (La.1979); State v. Franks, 373 So.2d 1307 (La.1979). As a general rule a sentence is excessive "if it is grossly out of proportion to the severity of the crime, or if it is nothing more than the purposeless and needless imposition of pain and suffering." State v. Bonanno, 384 So.2d 355, 357 (La.1980).
A review of the record in this case reveals that the trial judge was extremely thorough in particularizing the sentences, considering each and every aggravating and mitigating factor listed in Article 894.1 with respect to its application to the defendant. The judge noted that defendant was 23 years of age; had a lengthy juvenile record and an extensive adult record which included the crimes of theft and aggravated battery; while serving time in Caddo Correctional Institute had escaped and was only apprehended in connection with these offenses; and showed no remorse for the harm done his victim. It was in this context that the trial judge concluded that there was an undue risk that during a suspended or probated sentence the defendant would commit another crime; that the defendant was in need of correctional treatment; and that a lesser sentence would deprecate the seriousness of the offenses. Further, the trial judge discussed each possible mitigating factor in great detail and found none applicable to the defendant other than his youth. In summary, the record shows that the trial judge's articulation of reasons for the sentences was more than adequate.
Defendant argues that the officer who made the pre-sentence investigation and report mistakenly concluded that the shooting took place after a robbery was completed and was apparently designed to prevent identification of the robbers. This error was, in fact, called to the attention of the trial judge prior to sentencing and the state agreed that the report was erroneous at this point. Therefore, the mistake caused no prejudice to defendant.
The sentences imposed were well within the statutorily defined range and do not appear grossly disproportionate to the severity of the offenses nor imposed merely for the purposeless and needless imposition of pain and suffering. Consequently, this assignment is without merit.

DECREE
Finding no reversible error in defendant's assignments of error, we affirm his convictions and sentences.
NOTES
[*] Judges O. E. Price of the Court of Appeal, Second Circuit, G. William Swift, Jr., of the Court of Appeal, Third Circuit, and Fred W. Jones, Jr., of the Court of Appeal, Second Circuit, participated in this decision as Associate Justices Ad Hoc, joined by Chief Justice John A. Dixon, Jr., and Associate Justices Walter F. Marcus, Jr., James L. Dennis, and Jack C. Watson.
[1] Defendant also complains that the trial judge sentenced him to forty years "in connection with the crime of armed robbery" and he was tried and convicted of attempted armed robbery. A reading of the sentencing transcript reveals that the judge was clearly aware of the crime involved and sentenced defendant accordingly.