914 So.2d 1168 (2005)
STATE of Louisiana, Appellee
v.
Timothy Warren LEDFORD, Appellant.
No. 40,318-KW.
Court of Appeal of Louisiana, Second Circuit.
October 28, 2005.
*1170 James E. Beal, Jonesboro, for Appellant.
Walter E. May, Jr., District Attorney, Douglas L. Stokes, Jr., Robert A. Moore, Assistant District Attorneys, for Appellee.
Before WILLIAMS, GASKINS and DREW, JJ.
WILLIAMS, J.
The defendant, Timothy Warren Ledford, was charged by bill of information with possession of marijuana, in violation of LSA-R.S. 40:966(D)(1), and possession of drug paraphernalia, in violation of LSA-R.S. 40:1033. After the trial court denied the defendant's motion to suppress, the defendant entered a plea of guilty, reserving his right to seek review of the trial court's ruling pursuant to State v. Crosby, 338 So.2d 584 (La.1976). The defendant was sentenced to pay a $500 fine plus costs and to serve six months in the parish jail. The execution of the sentence was suspended, and the defendant was placed on supervised probation for a period of one year.
Based upon the defendant's application, we granted a supervisory writ to review the trial court's ruling. The trial court's denial of the motion to suppress is reversed, and the defendant's plea of guilty is vacated. The matter is remanded for further proceedings.

FACTS AND PROCEDURAL HISTORY
On August 1, 2004, at approximately 5:55 p.m., the Jackson Parish Sheriff's Office received a cellular telephone call from a motorist who reported a "fight" between a man and a woman in the yard of a residence located on Clay-Ansley Highway. The Jackson Parish Sheriff's Office notified the Lincoln Parish Sheriff's Office "in case the residence was in their parish."[1] Two Lincoln Parish deputies, Deputy Taft Watts and Deputy Mike Lewis, were the first to arrive at the scene, which was later determined to be the defendant's residence. As the deputies approached Alice Megeehe in the yard of the residence, they noticed that she had a small amount of blood on her chin, but she had no visible cuts, bruises or abrasions.[2] Ms. Megeehe informed the deputies that the defendant had run into the woods when he saw the officers approaching. Subsequently, Deputy Horton of the Jackson Parish Sheriff's Office arrived at the residence and was *1171 informed by Ms. Megeehe that the defendant had run into the woods. The Lincoln Parish deputies informed Deputy Horton that Ms. Megeehe had denied them permission to enter the residence.
According to the arrest report prepared by Deputy Horton, Ms. Megeehe told the deputies that she "did not want them going inside the residence." Ms. Megeehe also stated that she had been living with the defendant for a short time, but she had called someone to take her back to her home in Webster Parish. The arrest report also stated, "Deputies thought it possible that Ledford was inside the residence and that Megeehe was covering for him."
During the hearing on the motion to suppress, Deputy Horton testified that the deputies entered the residence to ensure that the defendant was not waiting inside to do Ms. Megeehe or the deputies harm. However, Ms. Megeehe testified that she knew the defendant was not in the house, and she informed the deputies of that fact. While inside the house, the deputies observed a "small amount of marijuana" on a plate inside the back bedroom of the residence, and a "roach clip" and several "marijuana roaches" in other parts of the residence. The deputies seized the items and "tagged" them for evidence.
Three days later, Deputy Horton obtained a warrant for the defendant's arrest. The defendant was arrested at his residence on August 16, 2004. He was later charged by bill of information with possession of marijuana, in violation of LSA-R.S. 40:966(D)(1),[3] and possession of drug paraphernalia, in violation of LSA-R.S. 40:1033.[4]
The defendant filed a motion to suppress the evidence obtained during the search of his residence, arguing that the search of the residence was conducted in violation of his rights under the Fourth Amendment to the United States Constitution. The trial court denied the motion. The court found that the officer had a right to enter the house and ensure that the defendant was not hiding there. The defendant pled guilty to the charges, reserving his right to seek review of the ruling on the motion to suppress pursuant to State v. Crosby, supra. Thereafter, the defendant filed an application for a supervisory writ of review with this court. We granted the writ to review the correctness of the trial court's ruling.

DISCUSSION
The right of every person to be secure in his person, house, papers and effects, against unreasonable searches and seizures, is guaranteed by the Fourth Amendment to the United States Constitution and Article I, § 5 of the 1974 Louisiana Constitution. It is well settled that a search and seizure conducted without a warrant issued on probable cause is per se unreasonable unless the warrantless *1172 search and seizure can be justified by one of the narrowly drawn exceptions to the warrant requirement. State v. Thompson, XXXX-XXXX (La.4/9/03), 842 So.2d 330; State v. Tatum, 466 So.2d 29 (La.1985).
The purpose of limiting warrantless searches to certain recognized exceptions is to preserve the constitutional safeguards provided by a warrant, while accommodating the necessity of warrantless searches under special circumstances. Donovan v. Dewey, 452 U.S. 594, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). When the constitutionality of a warrantless search or seizure is placed at issue by a motion to suppress the evidence, the state bears the burden of proving that the search and seizure was justified pursuant to one of the exceptions to the warrant requirement. LSA-C.Cr.P. art. 703(D);[5]State v. Johnson, 32,384 (La.App. 2d Cir.9/22/99), 748 So.2d 31.
In this case, the state argues the search of the defendant's residence was constitutionally valid under the plain view and exigent circumstances exceptions to the warrant requirement.

Plain View
A warrantless seizure of an item that comes within plain view of an officer in a legitimate position to view the item may be reasonable under the Fourth Amendment. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); State v. Guiden, 399 So.2d 194 (La.1981), cert. denied, 454 U.S. 1150, 102 S.Ct. 1017, 71 L.Ed.2d 305 (1982). The plain view doctrine renders a warrantless search reasonable: (1) if the police officer is lawfully in the place from which he views the object; (2) where the object's incriminating character is immediately apparent; and (3) the officer has a lawful right of access to the object. Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); Guiden, supra; State v. Willis, 36,759 (La.App. 2d Cir.4/9/03), 843 So.2d 592.
It is axiomatic that in order for the "plain view" doctrine to be applicable to the recovery of evidence in this case, it is necessary for the recovering officers to have a right to be in the position from which the view is obtained. However, in the instant case, the deputies entered the defendant's residence without an arrest warrant or a search warrant, after having been expressly denied permission to enter the premises by Ms. Megeehe, a co-resident of the premises. Accordingly, the plain view exception to the warrant requirement is inapplicable in this case, as the deputies clearly were not lawfully in the place from which the contraband was viewed.

Exigent Circumstances
Warrantless entries into the home for arrest or seizure are invalid in the absence of exigent circumstances. Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). The Fourth Amendment has drawn a firm line at the entrance to the home; therefore, in order to justify a non-consensual warrantless intrusion into a private premises, a police officer needs both exigent circumstances and probable cause to arrest or *1173 search. State v. Brisban, XXXX-XXXX (La.2/26/02), 809 So.2d 923; State v. Talbert, 449 So.2d 446 (La.1984); State v. Hathaway, 411 So.2d 1074 (La.1982). Indeed, the United States Supreme Court recently reiterated the firmly established rule that police officers need either a warrant or probable cause to either arrest or search, plus exigent circumstances in order to make a lawful entry into a home. Kirk v. Louisiana, 536 U.S. 635, 637, 122 S.Ct. 2458, 2459, 153 L.Ed.2d 599 (2002) (per curiam) (referencing Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)). Exigent circumstances may arise from the need to prevent the offender's escape, minimize the possibility of a violent confrontation which could cause injury to the officers and the public, and preserve evidence from destruction or concealment. Brisban, supra; State v. Hathaway, 411 So.2d 1074 (La.1982).
According to the state, the deputies entered the defendant's residence to look for the defendant for the purpose of ensuring the safety of Ms. Megeehe and the safety of the deputies. The state implies that the officers were justified in by-passing the warrant requirement because there had been a physical altercation between the defendant and Ms. Megeehe, and the defendant "could have been" inside of the residence, armed and waiting to cause physical harm to the officers and Ms. Megeehe. Assuming, without deciding, that the information possessed by the officers amounted to probable cause to believe that the defendant was inside of the residence, we do not find the existence of exigent circumstances which is required, in addition to probable cause, in any warrantless search. According to the arrest report, the testimony of Deputy Horton, and the testimony of Ms. Megeehe, the deputies were informed that the defendant was not inside of the residence. Ms. Megeehe had informed the deputies that the defendant had run into the woods. Thus, the deputies had no reason to believe that the defendant was in the home. Additionally, the deputies knew that the fight between the defendant and Ms. Megeehe had taken place in the front yard of the residence. Consequently, the officers could not reasonably be understood to have been acting to preserve any evidence. Also, there is no indication that the defendant, even if in the residence, posed any threat to the officers or Ms. Megeehe. No weapons were observed or reported by either Ms. Megeehe or the caller who reported the fight to the sheriff's office. Regarding the safety of Ms. Megeehe, the deputies could have either taken her with them when they left or waited with her until the person she had called to take her to Webster Parish arrived. At any rate, any alleged concern for Ms. Megeehe rings hollow when, after the search of the residence disclosed that the defendant was not in the house, the officers left Ms. Megeehe alone at the residence, despite having been told that the defendant was in the woods near the house. Moreover, the residence was under police supervision from the time the deputies arrived until the search and seizure took place. There is no indication in the record that the officers were prevented in any way from adhering to the warrant application procedure.
Nor can the actions of the officers be construed to have been a protective sweep. A "protective sweep" is a quick and limited search of a premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding. Maryland v. Buie, 494 *1174 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990).[6] In Buie, the Supreme Court held that the Fourth Amendment to the United States Constitution permits a limited protective sweep in conjunction with an in-home arrest when the searching officer possesses a reasonable belief, based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene. The Court stated:
[A]s an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.
Buie, 494 U.S. at 334, 110 S.Ct. 1093. The Court further stated:
We should emphasize that such a protective sweep, aimed at protecting the arresting officers, if justified by the circumstances, is nevertheless not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found. The sweep lasts no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises.
Buie, 494 U.S. at 335-36, 110 S.Ct. 1093.
A protective sweep does not have to always be incident to an arrest. United States v. Gould, 364 F.3d 578 (5th Cir.), cert. denied, 543 U.S. 955, 125 S.Ct. 437, 160 L.Ed.2d 317 (2004). In Gould, after receiving a tip that the defendant, a known violent felon, was planning to kill two judges, sheriff's deputies went to the defendant's home to talk to him. Upon arriving at the residence, the deputies were granted permission to enter the home by a co-resident of the home, who indicated that the defendant was located in the back bedroom. The deputies approached the bedroom but were unable to ascertain the defendant's precise location. Consequently, the officers conducted a protective sweep of the room, looking under the bed and opening the doors to each of the two bedroom closets. During the sweep, the deputies noted the presence of three rifles in one of the closets but did not seize them at that time. The court upheld the validity of the sweep of the residence, noting that the police officers, who only intended to talk to the defendant, had a right to be inside the residence because they had the permission of a resident of the home.
In State v. Guiden, supra, after an arrest warrant was issued for the defendant's arrest for an attempted armed robbery and shooting, police officers received information that the defendant and an accomplice were hiding at a motel. The officers proceeded to the motel, surrounded the room where the two suspects were *1175 believed to be located, announced their presence and ordered the occupants of the room to come outside. The defendant and another individual (not the alleged accomplice) emerged from the room and were immediately placed under arrest. Since the accomplice had not appeared, the officers entered the motel room to see if he was hiding there. Once inside, one of the officers went into the bathroom to check for the presence of the accomplice and noticed a revolver in the open commode. At that point, the officer secured the room and left to obtain a search warrant. The search conducted pursuant to the warrant resulted in the retrieval of the weapon from the commode. The court upheld the search, quoting United States v. Agapito, 620 F.2d 324, 336 (2 Cir.1980), in which the court stated:
The reasonableness of a security check is simple and straightforward. From the standpoint of the individual, the intrusion on his privacy is slight; the search is cursory in nature and is intended to uncover only "persons, not things." United States v. Bowdach, 561 F.2d 1160, 1168 (5 Cir.1977). Once the security check has been completed and the premises secured, no further search be it extended or limited is permitted until a warrant is obtained. From the standpoint of the public, its interest in a security check is weighty. The delay attendant upon obtaining a warrant could enable accomplices lurking in another room to destroy evidence. More important, the safety of the arresting officers or members of the public may be jeopardized. Weighing the public interest against the modest intrusion on the privacy of the individual, Pennsylvania v. Mimms, 434 U.S. 106, 108-09[, 98 S.Ct. 330, 54 L.Ed.2d 331] (1977); Terry v. Ohio, 392 U.S. 1, 20-21[, 88 S.Ct. 1868, 20 L.Ed.2d 889] (1968), a security check conducted under the circumstances stated above satisfies the reasonableness requirement of the Fourth Amendment.
Guiden, 399 So.2d at 199. The Guiden court noted that the officers had arrest warrants for individuals wanted in connection with the shooting and attempted armed robbery, and it was expected that the suspects were armed and dangerous. Additionally, since only one of the suspects came out of the motel room, the police officers had reason to believe that the other wanted individual was still in the room. Therefore, the court concluded that there was prior justification for intrusion into the motel room, and the weapon was inadvertently discovered in plain view.
In State v. Narcisse, XXXX-XXXX (La.App. 5 Cir. 6/27/01), 791 So.2d 149, after responding to a call regarding a burglary complaint, police officers learned that the two suspects were in a brown car around the corner from the scene of the incident. The victim identified the defendant as one of the suspects. The officers spotted a brown car near an apartment complex and began to knock on apartment doors. As one of the officers knocked on an apartment door, the defendant came out of another apartment several doors down and indicated that he was the resident of the apartment where the officers were knocking. At that point, the defendant was placed under arrest.[7] As the officer was arresting the defendant, he heard a noise inside of the defendant's apartment. He looked inside and saw the other suspect running out of the back sliding glass door, and the other officer pursued him. *1176 During a security check of the apartment, one of the officers observed bags of marijuana and a handgun lying on a bed in an upstairs bedroom. The narcotics division was called to the scene, and the defendant consented to a search of his apartment. The court upheld the validity of the search, stating, "Considering that both suspects were in defendant's apartment before the police arrived, and one fled through the back door, a security check of the apartment to determine if anyone else was inside was certainly justified." Narcisse, 791 So.2d at 153.
In State v. Robichaux, XXXX-XXXX (La. App. 4 Cir. 3/14/01), 788 So.2d 458, writ denied, XXXX-XXXX (La.3/15/02), 811 So.2d 897, police officers received a tip that there was "trouble" at an apartment on North Tonti Street in New Orleans. As the police officers approached the apartment, they noticed drops of blood on the ground and rear porch, and they heard someone moaning inside. The victim, who was partially clothed and bleeding from the head, met the officers at the back door and informed them that she had been attacked with a hammer, raped and tortured over a period of several hours. She identified the defendant as her assailant. The officers performed a sweep of the apartment and found a hammer. The court held that the search of the residence and the seizure of the hammer were valid, stating, "The officers were ... justified to make a limited sweep of the premises to verify that there was no one else in the residence who could have posed a threat to the officers or who could have destroyed evidence." Id. at 468.
In State v. James, 99-1406 (La.App. 4 Cir. 7/19/00), 788 So.2d 23, writ denied, 2000-2473 (La.6/29/01), 794 So.2d 822, during an investigation of allegations of aggravated rape, crime against nature and aggravated burglary, the victim informed the police officers of the perpetrator's identity and told them where he lived. When officers arrived at the defendant's house, the defendant opened the door. At that point, the officers noticed dried blood on the side of the defendant's jaw and placed him under arrest. The officer asked the defendant if anyone else was in the house, and the defendant responded in the negative. The defendant then gave the officer permission to check the house for himself. Once inside, the officer observed some shoes with what appeared to be blood on them and a television set. He also observed water in the bathtub. While the officer was still inside of the house, the victim's mother and brother arrived and told the officer that the perpetrator had taken the victim's television set and identified the television set as belonging to the victim.[8] Noting that the defendant had consented to the search of his residence, the court stated, "The officer was justified, with or without the consent of the appellant, to make a limited protective sweep to be certain that there was no one lurking in the residence who could destroy evidence or pose a danger to the officers or members of the public." Id. at 31.
All of the above referenced cases are distinguishable from the instant matter. In Gould and Robichaux, the officers were granted permission to enter the residence by someone who lived at the residence. In Guiden, the officers had secured a warrant for the defendant's arrest and for the arrest of an accomplice who did not exit the room when ordered to do so and was presumed to have been still in the room. Also, because the defendant and his accomplice had just committed an armed robbery and attempted murder, they were considered armed and dangerous. In *1177 James, the sweep of the residence was incident to the defendant's arrest, and the defendant granted the officers permission to search his house.
In this case, we must first point out that the officers had neither a warrant for the defendant's arrest nor consent to search the residence. As stated above, the deputies arrived at the defendant's residence to investigate a call with regard to a fight which occurred in the yard in front of the residence. Upon their arrival at the residence, Ms. Megeehe informed the deputies that the defendant had left the residence, and she specifically denied the officers permission to enter the residence.
In sum, the facts of this case do not show the entry into the defendant's residence, without a warrant or consent, to conduct a "protective sweep" was justified by any reasonable articulable suspicion that the defendant was or would be inside of the residence or that, even if present, he would be any danger to anyone at the scene. Accordingly, we find that the state failed to meet its burden of proving that the search of the residence was justified pursuant to one of the exceptions to the warrant requirement.

CONCLUSION
For the reasons stated above, we reverse the trial court's ruling denying the defendant's motion to suppress and vacate the defendant's plea of guilty. We remand this matter for further proceedings.
RULING ON MOTION TO SUPPRESS REVERSED; GUILTY PLEA VACATED; REMANDED.
NOTES
[1] It was later determined that the residence was located in Jackson Parish.
[2] At the hearing on the motion to suppress, Ms. Megeehe testified that the defendant never struck her. She stated that the blood on her chin could have occurred either when she attempted to knock the defendant against her car or when she bit the defendant, and the blood could have been either hers or the defendant's.
[3] Although the defendant was billed under LSA-R.S. 40:966(D)(1), LSA-R.S. 40:966(E) pertains to the possession of marijuana, and provides, in pertinent part:

Possession of marijuana. (1) Except as provided in Subsections E and F of this section, on a first conviction for violation of Subsection C of this Section with regard to marijuana ..., the offender shall be fined not more than five hundred dollars, imprisoned in the parish jail for not more than six months, or both.
[4] LSA-R.S. 40:1033 provides in pertinent part:

* * *
It is unlawful for any person to use, or to possess with intent to use, any drug paraphernalia....
* * *
LSA-R.S. 40:1031(A)(12)(e) defines "roach clips" as "drug paraphernalia."
[5] LSA-C.Cr.P. art. 703(D) provides:

On the trial of a motion to suppress filed under the provisions of this Article, the burden of proof is on the defendant to prove the ground of his motion, except that the state shall have the burden of proving the admissibility of a purported confession or statement by the defendant or of any evidence seized without a warrant.
[6] In Buie, two men committed an armed robbery of a restaurant. One of the robbers was wearing a red running suit. Armed with an arrest warrant, six or seven police officers proceeded to the defendant's house. Once inside, the officers scattered throughout the first and second floors of the house. One of the officers ordered anyone in the basement to come out, and the defendant eventually emerged from the basement. At that point, the defendant was arrested, searched and handcuffed. Thereafter, a second officer entered the basement to check for other occupants and observed a red running suit in plain view.
[7] The victim had identified the defendant as "Boo," and the defendant acknowledged that he was "Boo" when asked by the officers.
[8] The television set was identifiable by paint on the extension cord.