Judgment rendered February 28, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C. Cr. P.

No. 55,427-KW

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                    Respondent

versus

MARCUS JACKSON                    Applicant

* * * * *

On Application for Writs from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 383,732

Honorable Erin Leigh Waddell Garrett, Judge

* * * * *

KENNETH J. BECK, PLC                    Counsel for Applicant
By: Kenneth J. Beck

JAMES E. STEWART, SR.                    Counsel for Respondent
District Attorney

ROSS STEWART OWEN
Assistant District Attorney

* * * * *

Before THOMPSON, ROBINSON, and MARCOTTE, JJ.

**THOMPSON, J.**

Marcus Jackson, the purported roommate of a parolee, was arrested when drugs were found during a residence check of the parolee by a parole officer. After observing drugs in the common area of the residence, a warrantless search of the entire home followed, during which firearms were discovered. Possession of firearms in addition to drugs is prohibited.

Jackson, who was not on parole, was charged with possession with intent to distribute the drugs and illegal carrying of weapons while in possession of a controlled dangerous substance. Jackson filed a motion to suppress the evidence resulting from the warrantless search of the residence, arguing that he maintained his rights to privacy in his own home, despite the parolee's diminished expectation of privacy. The trial court denied the motion to suppress. For the following reasons, we affirm the denial of the motion to suppress as it relates to the drugs discovered but reverse in relation to firearms found in other areas of the home from the warrantless search, finding no exigent circumstances existed to support such a search.

## FACTS

Kelvin Hughes ("Hughes") was released from incarceration and was on parole under the supervision of Officer Sharie Cone ("Officer Cone") with the Louisiana Office of Probation and Parole. One requirement for parolees is they maintain current residential addresses on file with their parole officer. On May 25, 2021, Officer Cone went to the residence on Red Bud Lane in Shreveport, Louisiana, provided by Hughes as his, in order to make contact with him as a required condition of his parole. Hughes had previously provided this address to the Office of Probation and Parole as the place where he resided. The individual asserting ownership of the home is

Marcus Jackson ("Jackson"), who is Hughes' cousin. Jackson was not on probation or parole at the time giving rise to this matter. Events occurring during the residence check of Hughes at the residence by Officer Cone resulted in a spontaneous search of Jackson's entire home, which culminated in Jackson's arrest and his ultimately being charged by bill of information with the following two counts:

(1) Possession with intent to distribute schedule I CDS (Marijuana) (less than 2.5 pounds) in violation of La. R.S. 40:966(A)(1) & (B)(2)(a).

(2) Illegal carrying of weapons while in possession of CDS, in violation of La. R.S. 14:95(E).

The spontaneous search was made without a warrant, and Jackson subsequently moved to suppress the evidence obtained from the search in a motion dated January 18, 2022. Jackson contended that Hughes' diminished expectation of privacy as a parolee did not diminish Jackson's right to privacy and the protections against warrantless searches of his home under the Fourth Amendment of the U.S. Constitution and the La. Const. art. I, §5.

Following an evidentiary hearing on May 30, 2023, where testimony regarding the search was adduced, evidence submitted, and oral argument made, the court denied the motion to suppress. The transcript of the hearing details the establishment of the facts which follow.

On May 25, 2021, Officer Cone attempted to contact her parolee, Hughes, at the address he supplied after he was released on parole – being the residence at 3425 Red Bud Lane in Shreveport. The residence was subsequently asserted to be owned by his cousin, Jackson. Officer Cone testified that she previously attempted to visit Hughes at this address, but no one was home. When she arrived at the house on this visit, Hughes opened

2

the door, and she stepped inside the house into the living room. Officer Cone testified that she immediately saw on the coffee table two heat-sealed packages of what is referred to by those familiar with drug use or in law enforcement as "candy," which she explained is a concoction of cereal mixed with marijuana. According to her testimony, Officer Cone immediately recognized the familiar-looking packages as contraband based on her 31 years of experience on the job. She further testified that the use of the heat-seal packaging indicated the intent to distribute the contraband, as opposed to it being intended for personal use.

Officer Cone testified that when she recognized the packages as marijuana candy, she read Hughes his *Miranda* rights and placed him under arrest for violating the terms of his parole. She did not state whether she handcuffed Hughes at that time. Officer Cone testified she asked Hughes if there were other people in the house at the time; Hughes said that there was one other person in the house – his cousin, Jackson. Hughes also told Officer Cone that the marijuana candy belonged to Jackson.

Officer Cone testified that Jackson then entered the living room from his bedroom wearing a bathrobe. As Jackson walked into the room, Hughes said to him, "They found your candy." Officer Cone testified that Jackson responded, "Okay, so." She testified she construed Jackson's response to be an admission that he owned the marijuana candy. Officer Cone then read Jackson his *Miranda* rights, but did not specify whether she handcuffed Jackson at that time. Officer Cone then asked Jackson if there "were there any weapons in the residence?" Officer Cone said that Jackson responded affirmatively, stating that he "had plenty."

3

Officer Cone called for assistance to come in the house and do a "violation search." She did not ask Jackson for his consent to search any areas of the house. The record shows that on the date of his arrest, Jackson did not have any prior convictions, he was not on parole under her supervision, and he had a permit for his guns. Officer Cone could not recall if Jackson told her to stop searching his house. She testified that she did not believe she needed Jackson's consent to search the house:

> We have – when someone is on parole and they live at a residence, we have all the common areas and their bedroom. And once you find any illegal substance in the common areas, it gives you the house.

The other officers came into the house and conducted a search of the house. They found a total of 86.673 grams (slightly over 3 ounces) of marijuana in the home. It is unclear from the record if this included the marijuana candy found in the common area. Officer Cone said that the lab never determined how much marijuana was in the marijuana candy, but she concluded, based on her experience as a parole officer, that there was enough to surpass the 14-gram requirement for making it a felony to possess both guns and drugs, which is strictly prohibited for obvious reasons under La. R.S. 14:95(E).

While conducting the search, officers also found several firearms and ammunition in other areas in the home. Specifically, officers found two semi-automatic handguns with extended magazines for carrying up to 40 rounds, a banana clip, a high-capacity magazine for assault rifles, as well as ammunition for that clip in the house. There was no testimony regarding the rooms or location in the house where the weapons were found, but the record does indicate the guns were not located in the same room as the

4

marijuana candy on display in the living room. Officer Cone identified Jackson as the person who said the weapons were his, and she said he never objected that she did not have a warrant to search the premises.

When Officer Cone was asked whether she had the authority to arrest Jackson, Officer Cone answered affirmatively, and she read the following statutory provision, La. R.S. 40:2402, subsection 3:

> [A] peace officer means any full-time employee of the state, a municipality, a sheriff, or other public agency, whose permanent duties actually include the making of arrests, and performing searches and seizures, or the execution of criminal warrants, and is responsible for the prevention and detection of crime or for the enforcement of the penal, traffic, or highway laws of the state, but not including any elected or appointed head of a law enforcement department.

Jackson also testified at the evidentiary hearing. He denied that Hughes lived at his house. Jackson testified he let Hughes spend the night because Hughes' daughter was going to graduate from Huntington High School the next day. Jackson testified that he thought the marijuana candy was simply a rice crispy treat and had no idea there was marijuana in it.

Following Jackson's testimony, counsel argued that Jackson never consented to a warrantless search of his house or gave up his right to require a warrant to search his home. Jackson denied that Hughes lived with him or that he ever gave Hughes or the probation and parole department permission to use his address as his home. Counsel contended that under *Katz v. United States*, 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967), "the Fourth Amendment protects persons not places." Therefore, the probation and parole department had authority to do a warrantless "parole violation search" only with regard to Hughes, not Jackson.

5

Counsel further contended that the two packages of marijuana candy on the coffee table were not readily identifiable as marijuana. He contended that the officers had no grounds to search his house, and the "plain view" doctrine requires that the object be immediately identifiable as contraband. However, even if they did have grounds to believe the material on the coffee table was marijuana, Jackson never waived his privacy rights regarding a search of his house. Counsel also argued that Officer Cone lacked authority to investigate and arrest Jackson, who was not subject to her parole supervision.

At the conclusion of the hearing the trial court denied the motion to suppress. Jackson's counsel orally gave notice of intent to file writ applications on May 30, 2023, and filed written notices for each ruling on June 6, 2023. The court set return dates of June 30, 2023. On August 9, 2023, the writ application was granted to docket by this court.

## DISCUSSION

Jackson asserts one assignment of error regarding the trial court's denial of the motion to suppress.

**Assignment of Error:** **The trial court erred in denying Jackson's motion to suppress the evidence in that it failed to distinguish Jackson's constitutional rights to privacy and against an unreasonable and warrantless search of his home from those of a person on parole who happened to be living there, thus ruling that the evidence found in his home as a result of a compliance search by the Office of Probation and Parole of one person could be used at trial against a man who is not on probation or parole and whose home was searched without a warrant or under any articulable exigent circumstances.**

Jackson argues that the trial court should have granted the motion to suppress the evidence in this matter as to both the marijuana and the firearms found in the home. Jackson asserts that the home may be searched as to Hughes, who is on parole, when a reasonable suspicion exists that criminal

6

conduct is occurring therein. Jackson states that this warrantless search is only true for Hughes and not for himself, because he was not on probation or parole. Jackson argues he maintains an expectation of privacy in his home, and he maintains his rights against unreasonable searches and seizures.

The Fourth Amendment to the United States Constitution protects "[the] right of people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Similarly, Louisiana Constitution Article 1, § 5, provides as follows:

> Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court.

Both the United States and Louisiana constitutions prohibit unreasonable searches and seizures of constitutionally protected locations, and a warrant based upon probable cause is normally required for such a search to be conducted. The capacity to claim the protection of the Fourth Amendment depends upon whether the person who claims the protection has a legitimate expectation of privacy in the invaded place. *Katz v. United States, supra*; *State v. Edwards,* 00-1246 (La. 6/1/01), 787 So.2d 981.

It is widely recognized that parolees have a reduced expectation of privacy provided by the Fourth Amendment of the U.S. Constitution and under La. Const. art. I, § 5. In limited circumstances, a parolee's consent to a warrantless search of his person, residence, vehicle, etc., is "deemed" by

7

La. R.S. 15:574.4.2(A)(2)(i), which provides that, as a condition of parole, parolee(s):

> Agree to visits at residence or place of employment by the probation and parole officer at any time. Further agree to searches of person, property, residence, or vehicle, *when reasonable suspicion exists that criminal activity has been engaged in while on parole.* (Emphasis added.)

This reduced expectation of privacy allows reasonable warrantless searches of the probationer's or parolee's person and residence by the probation and parole officer, even though less than probable cause may be shown. *State v. Patrick*, 381 So. 2d 501 (La. 1980); *State v. Drane*, 36,230 (La. App. 2 Cir. 9/18/02), 828 So. 2d 107, *writ denied*, 02-2619 (La. 3/28/03), 840 So. 2d 566; *State v. Vailes*, 564 So. 2d 778 (La. App. 2 Cir. 1990).

A probationer's or parolee's reduced expectation of privacy directly follows from his prior conviction and his signed agreement to allow a probation or parole officer to investigate his activities in order to confirm compliance with the conditions of his probation or parole. *State v. Carter*, 485 So. 2d 260 (La. App. 3 Cir. 1986), *writ denied*, 492 So. 2d 1216 (La. 1986), *cert denied*, 479 U.S. 1087, 107 S. Ct. 1293, 94 L.Ed.2d 149 (1987). Thus, an individual on probation does not have the same freedom from governmental intrusion into his affairs as does the ordinary citizen. *United States v. Knights*, 534 U.S. 112, 122 S. Ct. 587, 151 L. Ed. 2d 497 (2001); *State v. Malone*, 403 So. 2d 1234 (La. 1981).

A probationer or parolee is not, however, subject to the unrestrained power of the authorities. A search of the probationer or parolee may not be a subterfuge for a police investigation. *Malone, supra.* A warrantless search of a probationer's or parolee's property may be permissible when:

8

> [I]t is conducted when the officer believes such a search is necessary in the performance of his duties, and must be reasonable in light of the total atmosphere in which it takes place. In determining the reasonableness of a warrantless search, [an appellate court] must consider (1) the scope of the particular intrusion, (2) the manner in which it was conducted, (3) the justification for initiating it, and (4) the place in which it was conducted.

*Malone, supra.*

Although the State still bears the burden of proof because the search was conducted without a warrant, when the search is conducted for probation violations, the State's burden will be met when it establishes that there was reasonable suspicion that criminal activity was occurring. *Id*.; *See also, State v. Marino*, 00-1131 (La. App. 4 Cir. 6/27/01), 804 So. 2d 47, *writ denied,* 01-2287 (La. 8/30/02), 823 So. 2d 936.

A warrantless seizure of an item that comes within plain view of an officer in a legitimate position to view the item may also be reasonable under the Fourth Amendment. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S. Ct. 2022, 29 L.Ed.2d 564 (1971); *State v. Guiden,* 399 So.2d 194 (La. 1981), *cert. denied,* 454 U.S. 1150, 102 S. Ct. 1017, 71 L.Ed.2d 305 (1982). The plain view doctrine renders a warrantless search reasonable: (1) if the police officer is lawfully in the place from which he views the object; (2) where the object's incriminating character is immediately apparent; and (3) the officer has a lawful right of access to the object. *Horton v. California,* 496 U.S. 128, 110 S. Ct. 2301, 110 L.Ed.2d 112 (1990); *State v. Guiden, supra; State v. Willis,* 36,759 (La. App. 2 Cir.4/9/03), 843 So.2d 592, *writ denied,* 04-1219 (La. 4/1/05), 897 So.2d 593.

The existence of exigent circumstances is among the recognized exceptions to the general warrant requirement under the Fourth Amendment;

thus, a warrant is not required for a search under the Fourth Amendment when exigent circumstances exist. *Payton v. New York*, 445 U.S. 573, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980); *State v. Hemphill*, 41,526 (La. App. 2 Cir. 11/17/07), 942 So. 2d 1263, *writ denied*, 06-2976 (La. 3/9/07), 949 So. 2d 441. Absent exigent circumstances, a warrantless entry into a home to search for weapons or contraband is unconstitutional even when a felony has been committed and there is probable cause to believe that incriminating evidence will be found within. *Groh v. Ramirez*, 540 U.S. 551, 124 S. Ct. 1284, 157 L. Ed. 2d 1068 (2004). On the other hand, exigent circumstances justify a warrantless entry, search, or seizure when "police officers, acting on probable cause and in good faith, reasonably believe from the totality of the circumstances that evidence or contraband will imminently be destroyed or the nature of the crime or character of the suspect(s) pose a risk of danger to the arresting officers or third persons." *State v. Warren*, 05-2248 (La. 2/22/07), 949 So. 2d 1215.

In *Kirk v. Louisiana,* 536 U.S. 635, 122 S. Ct. 2458, 153 L. Ed. 2d 599 (2002), the United States Supreme Court reiterated the firmly established rule that police officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home for purposes of an arrest or search. Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof, but more than mere suspicion. *State v. Warren*, *supra*.

In determining whether sufficient exigent circumstances exist to justify the warrantless entry and search or seizure, the court must "consider the totality of the circumstances and the 'inherent necessities of the situation at the time.'" *State v. Warren*, *supra*. The United States Supreme Court has

described exigent circumstances as "a plausible claim of specially pressing or urgent law enforcement need." *Illinois v. McArthur*, 531 U.S. 326, 331, 121 S. Ct. 946, 950, 148 L. Ed. 2d 838 (2001). Exigent circumstances may arise from the need to prevent the offender's escape, to minimize the possibility of a violent confrontation that could cause injury to the officers and the public, and to preserve evidence from destruction or concealment. *State v. Brisban*, 00-3437 (La. 2/26/02), 809 So. 2d 923.

Pursuant to a lawful arrest, an officer has the right to much more thoroughly search a defendant and his wing span, or lunge space, for weapons or evidence incident to a valid arrest. *State v. Sanders,* 36,941 (La. App. 2 Cir.4/11/03), 842 So. 2d 1260, *writ denied,* 03-1695 (La. 5/14/04), 872 So.2d 516. This rule is justified by the need to remove any weapon the arrestee might seek to use to resist arrest or to escape, and the need to prevent the concealment or destruction of evidence. *Thornton v. United States,* 541 U.S. 615, 124 S. Ct. 2127, 158 L. Ed. 2d 905 (2004); *Chimel v. California,* 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969). *See also, State v. Stephens*, 40,343 (La. App. 2 Cir. 12/14/05), 917 So. 2d 667, *writ denied,* 06-0441 (La. 9/22/06), 937 So. 2d 376.

The advance of technology has exponentially expedited the process of seeking and obtaining a search warrant. Immediate access by handheld cellphones, tablets, and computers provides for almost immediate delivery of electronic search warrant requests and the ability for electronic signatures by judges approving those requests when appropriate. *See* La. C. Cr. P. art. 162.2. When confronted with the possibility of illegal activity by those who happen to be in proximity of parolees and probationers, precaution must be taken so as to not diminish constitutionally protected rights.

11

We find that the trial court erred in denying the motion to suppress as it relates to the firearms that were not in plain view in the common area of Jackson's home. The record establishes that Officer Cone was lawfully in Jackson's home to conduct a visit with her parolee, Hughes, who had provided Jackson's address as his residence. Officer Cone immediately observed the marijuana candy when she entered the home and testified that its incriminating character was immediately apparent based on her experience in law enforcement. Because the contraband was observed in the common area, and she was in the home to perform her duties of supervising Hughes, she clearly had a lawful right of access to the contraband that she immediately encountered. She also was vested with the authority to search the immediate area to ensure her own safety as well as that of those in her charge.

However, Officer Cone did not have the authority to search the entire premises of Jackson's home once she observed the contraband in the common area. Officer Cone was only able to lawfully search the common area and any rooms that were private to her parole supervisee, Hughes. Further, Officer Cone did not err in placing Jackson under arrest in the common area of the home, due to his verbal confirmation in her opinion that the marijuana she observed in plain view belonged to him. A search incident to Jackson's lawful arrest was also warranted, in order to remove any weapon Jackson may have had on his person or in his wing span, and to prevent the concealment or destruction of evidence. We are bound by law and jurisprudence, however, to find that the search incident to Jackson's lawful arrest for the commission of the drug crime in the common area of his

12

home, absent exigent circumstances, did not allow the search to extend to his bedroom and other areas of the private home.

We acknowledge that according to Officer Cone's testimony, Jackson admitted to having firearms in the home. At that point, Officer Cone had sufficient probable cause to obtain a search warrant for the entire premises. She testified that she believed she had the authority to search the whole house. We find Officer Cone, although acting in good faith, was mistaken regarding her authority to search the entire home, and we do not find that any exigent circumstances existed at the time of Jackson's arrest to justify a search of his private quarters. Absent exigent circumstances, a warrantless entry into Jackson's private quarters to search for weapons or contraband was unconstitutional, even though a crime had clearly been committed in the common area of the home, and Officer Cone had probable cause to believe that guns would be found elsewhere in the home. A lawful search warrant was required to expand the search to those areas of the house.

Based on the testimony from the hearing on the motion to suppress, it appears as though there were no exigent circumstances accompanying Officer Cone's probable cause regarding the presence of firearms in the home. Jackson had been read his *Miranda* rights and was secured and under arrest; at that point, no evidence would be destroyed while officers sought and obtained a search warrant. Further, the record does not show that Jackson presented a danger to Officer Cone, the other officers, Hughes, or any other member of the public at the time of his arrest. Notably, the record is devoid of testimony regarding where exactly the firearms were found. Officer Cone did not testify that she observed any firearms in plain view in the living room when she entered the residence and observed the illegal

13

drugs.  Accordingly, Jackson's assignment of error as it relates to the firearms discovered pursuant to the warrantless search of his home has merit, as his entire home and his private quarters were not subject to search without a warrant.

## CONCLUSION

For the foregoing reasons, we conclude that the drug evidence found in the common area of Jackson's home is admissible, and the motion to suppress as to the drug evidence should be denied.  However, we conclude the firearms located in other areas of the residence were seized in violation of Jackson's privacy rights, and therefore, the motion to suppress as to the firearms only should be granted.

**AFFIRMED IN PART AND REVERSED IN PART.**